IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Robert Koon, ) | |
| ) | Civil Action No. 8:06-2000-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Jon Ozmint, James Sligh, ) | |
| Warden Padula, and Joseph ) | |
| Ubah, LCI Dentist, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants Jon Ozmint, James Sligh, and Warden Padula's motion for summary judgment.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on July 12, 2006, seeking damages for alleged civil rights violations. On January 17, 2007, the defendants Ozmint, Sligh, and Padula moved for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

---

[1]Originally, the plaintiff named John Doe, the dentist at Lee Correctional Institution. After the defendants filed this motion for summary judgment, the plaintiff moved to substitute Dr. Joseph Ubah who is the dentist at LCI for John Doe. On April 3, 2007, the undersigned granted the plaintiff's motion and subsequently ordered that Dr. Ubah be served.

on January 18, 2007, the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 6 and 7, 2007, the plaintiff filed responses opposing the defendants' summary judgment motion.

## **FACTS PRESENTED**

The plaintiff is currently an inmate with the South Carolina Department of Corrections ("SCDC") housed in the Lee Correctional Institution ("LCI"). From January 31 until August 14, 2006, the plaintiff was in "lockup" or the Special Management Unit ("SMU") at LCI. (Pl.'s Aff. ¶ 1.) While in SMU, the plaintiff contends his constitutional rights were violated by the defendants. He contends that certain SCDC policies, applicable only to SMU inmates, violate the First Amendment. Specifically, the plaintiff contends the SCDC policy which regulates the property that inmates housed in SMU may possess is unconstitutional. Pursuant to this policy, an inmate in SMU can possess one religious book, such as a Bible or Qur'an, one book or magazine which must be obtained through Library Services, and one box of legal materials. Before the inmate can receive another book or magazine, he must turn in a book or magazine.

The plaintiff also alleges a claim of medical indifference in regard to dental care. The plaintiff alleges that for the five months he was in SMU, he was denied all dental care.[2] The plaintiff is seeking injunctive and monetary relief. (Compl. 6.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against

---

[2] Although the plaintiff has not amended his complaint, it also appears that he is now alleging that the denial of dental treatment continued after his release back into the general population. (Pl.'s Mem. Opp. Summ. J. Mot. at 1 - Docket Entry # 24),

the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**First Amendment Claim**

The plaintiff contends that the SCDC policy limiting access to written materials, books and magazines for those inmates in SMU violates the First Amendment. SCDC Policy No. OP-22.12  ¶ 31 governs the property that inmates housed in a SMU may possess. (Robert Ward Aff. ¶ 3.) Pursuant to this policy, an SMU inmate may possess his primary religious book , such as a Bible or Qur'an, only one book or magazine at a time which must be obtained through Library Services, and one box of legal materials. (*Id.*)

4

Inmates clearly retain their First Amendment right of free speech in prison. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, in *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id.* at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*

In *Turner,* the Court identified four factors to consider: (1) Whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) Whether there are alternative avenues that remain open to the inmates to exercise the right; (3) The impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) Whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90.

In *Beard v. Banks*, 126 S.Ct. 2572 (2006), the Supreme Court recently upheld a policy similar to the SCDC's policy for SMU inmates. In *Beard*, the Court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. The Court determined the reason for the policy, which was to provide an incentive to promote better inmate behavior, satisfied the *Turner*

5

standard. Likewise, here, the SCDC policy is rationally related to legitimate and neutral governmental objectives.[3]

In his affidavit, Robert E. Ward, the SCDC's Director of Operations, outlines several governmental objectives of the policy. (Defs.' Mem. Supp. Summ. J. Mot. Attach. 2 - Ward Aff.) The policy creates an incentive or motivation for inmates placed in SMU to change their behavior to either obtain release from SMU or to avoid placement in SMU. (Ward Aff. ¶ 10.) The policy also places limitations on the amount of reading material to promote and maintain order and discipline. Limiting the number of books and periodicals reduces a potential fire hazard in the SMU. (Ward Aff. ¶ 8.) Limiting the number of books and periodicals reduces clutter and thus an SMU inmate has less places to hide drugs and weapons. (Ward Aff. ¶ 6.) In addition, the policy deters improper uses of paper available from books, newspapers and magazines. Inmates use paper from books, magazines, and newspapers to cover cell windows to conceal activity within their cell, jam the locks to prevent entry into their cell, and stop up toilets. (Ward Aff. ¶¶ 7, 9.) The policy of property restrictions serves legitimate security and safety objectives. The SCDC policy for SMU inmates is rationally related to legitimate and neutral governmental objectives.[4]

---

[3] The court notes that the prohibition is content-neutral as it applies to all books and publications regardless of content.

[4] The defendants also correctly note that the same regulations at issue here have been examined by several district judges in this district and found to be constitutional. *See, e.g., Corey v. Reich*, 2004 WL 3090234 (D.S.C. March 9, 2004); *Strong v. Ozmint*, C.A. No. 2:03-2256 (D.S.C. March 23, 2004); *Incumaa v. Ozmint*, C.A.No. 0:03-2776 (D.S.C. September 17, 2004).

Turning to the second factor in *Turner* and whether there are alternative avenues remaining open for the plaintiff to exercise his rights, the court notes that the SCDC policy does not deprive the plaintiff of all books, magazines, and reading material. It merely limits the amount he may possess. The plaintiff can possess his primary religious book and legal materials. Additionally, he can possess one book or magazine from Library Services. The plaintiff is not subject to a total ban on all reading materials.

The third factor in *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." 482 U.S. at 90. As the Supreme Court explained in *Beard,* the third factor is satisfied because correctional officials would otherwise not have this method of rewarding good behavior and for punishing inappropriate behavior.

The plaintiff contends that there are some inmates in SMU who are there not because of their conduct and the policy which applies to all SMU inmates therefore is not reasonably related to the legitimate penological interest of rewarding good behavior and punishing bad behavior. (Compl. at 4; Pl.'s Mem. Opp. Summ. J. Mot. 3-6.) While it does appear that some inmates could be placed in SMU for reasons other than bad behavior, there is no evidence that the plaintiff is one of those inmates. Significantly, the plaintiff's own behavior and resulting disciplinary action resulted in his placement in SMU. *See Koon v. Ozmint*, C/A No. 8:06-1072 (filed April 11, 2006)(Docket Entry # 24 - Aff. James Sligh Ex.

7

1).[5] Therefore, the plaintiff lacks standing to assert claims on behalf of other detainees. See *Laird v. Tatum,* 408 U.S. 1 (1972). *See also Hummer v. Dalton*, 657 F.2d 621, 625-626 (4th Cir.1981)(a prisoner cannot act as a "knight-errant" for others).

Finally, in assessing whether the presence of ready alternatives undermines the reasonableness of the policy, *Turner* does not impose a least restrictive alternative test. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. *Overton*, 539 U.S. at 136. The Supreme Court described this as a "high standard" to meet. *Id*. As the Supreme Court has recognized, restrictions on privileges are an effective "management technique" in controlling "high-security prisoners who have few other privileges to lose." *Id*. at 134. The plaintiff has not offered any reasonable alternative. Based on the foregoing, the court concludes that the SCDC policy is reasonably related to a legitimate penological goal. Accordingly, the defendants should be granted summary judgment on this claim.[6]

---

[5]Rule 201 of the Federal Rules of Evidence requires that a judicially noticed fact "not be subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Doctrine of "judicial notice" permits judge to consider generally accepted or readily verified fact as proved without requiring evidence to establish it. *United States v. Berrojo*, 628 F.2d 368 (5th Cir. 1980). Therefore, the undersigned can take judicial notice of the plaintiff's disciplinary record with SCDC and the fact that the plaintiff was in SMU due to disciplinary reasons.

[6]Additionally, the Court notes that the plaintiff has sued the defendants Ozmint, Sligh, and Padula in their official capacities. These defendants in their official capacities, are not "persons" amenable to suit under 42 U.S.C. § 1983. In their official capacities, they were acting as state officials and were, accordingly, the alter ego of the State of South Carolina. A state official sued in his official capacity is the alter ego of the State of South Carolina, and

**Medical/Dental Indifference Claim**

The plaintiff alleges he was denied all dental treatment while he was in SMU from January through August 2006. He alleges the defendants Ozmint, Sligh, and Paula approved of this alleged total denial of dental care by ignoring his grievances, letters, and requests. (Compl. at 5.) However, the plaintiff has presented no evidence that the defendants Ozmint, Sligh or Padula had actual knowledge and disregarded a substantial risk of serious injury to the plaintiff resulting from the alleged lack of dental care.

It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983 . *See, e.g., Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978). Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, the plaintiff must show: (1) a serious injury; and (2) deliberate indifference on the part of the defendants.

---

as such, is not subject to suit pursuant to 42 U.S.C. § 1983. Accordingly, the plaintiff's claims against the defendants Ozmint, Sligh, and Padula in their official capacities also should be dismissed.

Furthermore, a medical indifference claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977). To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Thus, in the context of a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison physician's constitutional violation. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990).

Here, the plaintiff has failed to allege any facts supporting a claim of medical indifference against the defendants Ozmint, Sligh, and Padula. The plaintiff's mere allegation that these defendants knew of grievances does not establish supervisory liability. Mere awareness of a complaint is not sufficient to show "knowledge that a subordinate was engaging in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury," which is the first prong of the supervisory liability standard. *Shaw*, 13 F.3d at 799. *See also*

10

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (holding prison officials cannot be held liable under § 1983 for failing to respond to grievances which alert them of unconstitutional actions); *Shelly v. Johnson*, 684 F.Supp. 941, 946 (W.D. Mich.1987)(holding that merely bringing problem to attention of supervisory official is not sufficient to impose liability). The plaintiff has also failed to provide any evidence demonstrating that the response of these defendants was inadequate and/or that their inaction caused any constitutional injury. Thus, the moving defendants cannot be held liable under a respondeat superior theory under § 1983 for the plaintiff's alleged lack of dental care. Accordingly, it is recommended that the moving defendants' summary judgment motion be granted.[7]

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Docket Entry #18) be GRANTED and the Defendants Ozmint, Sligh, and Padula be DISMISSED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

April 16, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

---

[7] Additionally, it appears that these defendants would be entitled to the defense of qualified immunity as there is no evidence to suggest that the defendants' conduct constituted a violation of clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).